1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,
                                            NO. CR. S-02-104 LKK
12           Plaintiff,

13      v.                                     O R D E R

14  CESAR VALDEZ-SANTOS,                    **TO BE PUBLISHED**

15           Defendant.
    _____/

16

17      A Fourth Superseding Indictment charged Cesar Valdez-Santos

18  and Victor Hurtado in Count One with conspiracy, pursued in both

19  Sacramento and Los Angeles counties, to manufacture and distribute

20  methamphetamine.  See 21 U.S.C. §§ 846 & 841(a)(1).  Count Three

21  charged Valdez-Santos and other "persons known and unknown" with

22  conspiracy, pursued in both Sacramento and Los Angeles counties,

23  to possess and distribute pseudoephedrine with knowledge that it

24  would be used to manufacture methamphetamine.  See 21 U.S.C. §§ 846

25  & 841(c)(2).  Count Four charged Valdez-Santos with possession and

26  distribution of a listed chemical, pseudoephedrine, in both

                                    1

1 Sacramento and Los Angeles counties, with knowledge that it would
2 be used to manufacture methamphetamine.  See 21 U.S.C. § 841(a)(2).

3    Trial commenced on January 25, 2005.  At the close of the
4 government's case, the court granted defendant Valdez-Santos'
5 motion for acquittal as to Count One, based on lack of proof of
6 that defendant's participation in the charged conspiracy.  The
7 defendant's motion for acquittal as to Counts Three and Four, or
8 in the alternative, for a change of venue to the Central District
9 of California, was taken under submission.

10    The case proceeded to trial and the jury found the defendant
11 guilty of the remaining counts.  The court then directed further
12 briefing on the matters taken under submission. The defendant's
13 motions are disposed of herein.

14                              **I.**

15                          **THE EVIDENCE**

16    Briefly summarizing, the evidence as to Count Three showed
17 that Jose Magana, Jorge Ayala, and Jesus Arreguin, traveled from
18 the Eastern District of California to the Los Angeles area for the
19 purpose of purchasing pseudoephedrine in pursuance of their
20 conspiracy to manufacture and distribute methamphetamine.  On
21 February 21, 2002, the defendant, Valdez-Santos, met with Magana
22 and company, and sold them pseudoephedrine under circumstances from
23 which a reasonable jury could infer that he understood that the
24 pseudoephedrine was to be used to manufacture methamphetamine.

25    The jury also heard that on March 7, 2002, the defendant and
26 Rios-Ramirez loaded boxes of pseudoephedrine from a warehouse

2

located in the Central District of California, and unloaded it at a residence on Abbott Road, also in the Central District.  Upon Rios-Ramirez' arrest, law enforcement officers found 176 bottles of pseudoephedrine at the Abbott Road location, and determined that Rios-Ramirez was in possession of approximately 1.6 million dollars in cash.  Following Valdez-Santos' arrest, the officers executed a search warrant at a storage locker associated with Rios-Ramirez' girlfriend, where methamphetamine was discovered.

## II.

## ANALYSIS

### A.   COUNT THREE, CONSPIRACY TO DISTRIBUTE PSEUDOEPHEDRINE

The defendant maintains that there is no evidence to support his conviction of conspiring with Magana and company.  He notes that the government maintains that his role in the asserted conspiracy was to deliver pseudoephedrine, and he contends that the seller of illicit chemicals is not a member of a conspiracy with his buyers.  I must agree.

The law in this circuit is that "as most circuits have held, proof that a defendant sold drugs to other individuals does not prove the existence of a conspiracy. [citations].  Rather, conspiracy requires proof of 'an agreement to commit a crime other than the crime that consists of the sale itself.'"  United States v. Lennick, 18 F.3d 18, 20 (9th Cir. 1994)(quoting United States v. Lechuga, 994 F.2d 346, 347 (7th Cir.)(en banc), cert. denied, 510 U.S. 982 (1993)).

////

1    The government seeks to distinguish _Lennick_ in two ways.
2 First, it contends there was a conspiracy between Rios-Ramirez,
3 Arreguin, Magana and Ayala to manufacture and distribute
4 methamphetamine, which this defendant joined when he obtained the
5 pseudoephedrine from Rios-Ramirez to deliver to Magana and company.
6 Second, the government appears to argue that _Lennick_ is limited to
7 distribution of prohibited material to ultimate users.  Neither
8 argument lies.

9    As to the argument of the conspiracy between Rios-Ramirez and
10 Magana and company, the argument falters on the _Lennick_ principle.
11 Rios-Ramirez' function was to supply pseudoephedrine as a seller.
12 There is no evidence to suggest that he had any interest whatsoever
13 in any profits to be made by the methamphetamine manufacturer or
14 its distribution.  There can be little doubt that Rios-Ramirez
15 fully understood that he was arranging for a sale for illicit
16 purposes.  Nonetheless, under the evidence, he had no involvement
17 in the manufacture and distribution of methamphetamine.  Indeed,
18 once the pseudoephedrine was sold, the seller would not care if the
19 conspirators decided to make cold medicine instead of
20 methamphetamine.  As the Circuit has explained in a case subsequent
21 to _Lennick_ explicating its principle, in _Lennick_ "we held that
22 without an agreement with those people for further distribution,
23 selling to them, even knowing that they would further distribute
24 the drug did not establish a conspiracy."  _United States v._
25 _Herrera-Gonzalez_, 263 F.3d 1092, 1097 (9th Cir. 2001).
26 ////

4

1    The second argument, namely that <u>Lennick</u> applies only to sales

2 to ultimate users, is equally unavailing.  The quotation from

3 <u>Herrera-Gonzalez</u>, noted above, disposes of that argument.

4 Moreover, the <u>Lechuga</u> case, relied upon by the Ninth Circuit in

5 <u>Lennick</u>, also undermines the government's argument.  As the <u>Lechuga</u>

6 court said, "the mere fact that [the defendant] sold [an alleged

7 co-conspirator] a quantity of cocaine too large for 'the alleged

8 co-conspirator's' personal use and therefore must have known [the

9 alleged co-conspirator] was planning to resell, is insufficient to

10 prove conspiracy . . . [the sale of] large quantities of controlled

11 substances, without more, cannot sustain a conspiracy conviction."

12 <u>Lechuga</u>, 994 F.2d at 347.

13    I thus conclude the defendant's motion for a directed verdict

14 as to Count Three must be granted.

15 **B.    COUNT FOUR, POSSESSION**

16    Counts Four, the possession charge, is attacked by the

17 defendant on the ground that venue did not lie in this district,

18 but lies only in the Central District of California.[1]  Although

19 this issue is, to say the least problematic, I conclude that this

20 argument also has merit.[2]

21 _____

22    [1]  The government candidly admits that defendant's motion at
the close of its evidence was timely.  Gov't Oppo. at 3-4.

23    [2]  Because the evidence of the defendant's possession in the
24 Central District is overwhelming, the court raised the issue of
harmless error at oral argument.  The government eschews reliance
on that doctrine, and the court does not consider it further.
25 Moreover, it is clear that the defendant's insistence on the motion
is based on his belief that in a trial in the Central District
26 there is a greater chance of Latinos on the jury, which he

1      The Constitution of the United States provides that a

2  defendant has a right to trial "by an impartial jury of the state

3  and district wherein the crime shall have been committed, which

4  district shall have been previously ascertained by law."  U.S.

5  CONST. Amend. VI; <u>and</u> <u>see</u> Fed. R. Crim. P. 18 ("unless a statute

6  or these rules provide otherwise, the government must prosecute an

7  offense in the district where the offense was committed. . . ."[3]

8      It is said that "in the federal system . . . venue is not

9  simply a prerequisite that the defendant may choose to challenge

10  pretrial; it is viewed as part of the case that the prosecution

11  must prove at trial."  4 LaFave, Israel & King, <u>Criminal Procedure</u>,

12  499-500.  It is the court's view that, as a factual matter, the

13  evidence positively demonstrates a lack of venue.  Put directly,

14  while the evidence more than supports a finding of possession with

15  intent to distribute, that possession occurred only in the Central

16  District.

17      Although the evidence is clear, the government seeks to avoid

18  the conclusion on legal grounds.  It asserts that venue was proper

19  because Valdez-Santos was guilty of aiding and abetting Magana and

20  company's possession in the Eastern District.  <u>See</u> 18 U.S.C. § 2

21  (one who aids or abets an offense is "punishable as a principal").

22  The issue is difficult and the result less than certain.

23  _____

24  perceives to be an advantage.

25      [3]  The court confesses to some puzzlement as to how a statute
   or rule could override a constitutional provision, but this case
26  does not involve such a question.

1   Possession must be prosecuted in the district in which the
2   possession occurred. United States v. Mendoza, 108 F.3d 1155, 1156
3   (9th Cir. 1997).  When Congress has not specifically defined where
4   a crime should be deemed to have occurred, the "'locus delicti must
5   be determined from the nature of the crime alleged and the location
6   of the act or acts constituting it.'" United States v. Cabrales,
7   524 U.S. 1, 5 (1978) (quoting United State v. Anderson, 328 U.S.
8   699, 703 (1946)).  A problem arises, however, when the acts
9   constituting a crime are committed in more than one state or
10  district.  To address these multi-district crimes, Congress enacted
11  18 U.S.C. § 3237(a), which provides that continuing crimes may be
12  tried in any of the venues in which a part of the crime was
13  committed.  "Under this statute, venue is constitutionally proper
14  in any district in which a part of the crime was committed.
15  '[W]here a crime consists of distinct parts which have different
16  localities the whole may be tried where any part can be proved to
17  have been done.'" United States v. Rodriguez-Moreno, 526 U.S. 275,
18  281 (1999) (quoting United States v. Lombardo, 241 U.S. 73, 77
19  (1916)).  In sum, as a general proposition, the government's
20  contention that a continuing crime, such as possession, may be
21  prosecuted in any district where the possession occurred is well
22  taken.  Given that an aider and abetter may be tried as a
23  principal, it would appear sensible to hold that an aider and
24  abetter to a continuing crime may be tried anywhere a part of the
25  crime occurred.  See, e.g., United States v. Buckhanon, 505 F.2d
26  1079 (8th Cir. 1974).  It appears to the court, however, that the

7

1  doctrines of continuing crime and aider and abetter status do not

2  end analysis in the instant case.

3      In the matter at bar, the self-evident proposition that a

4  defendant may not aid and abet himself comes into play.  It is

5  clear that Valdez-Sanchez is guilty of the crime of possession with

6  intent to distribute, but it is only in connection with that crime

7  that he delivered drugs to Magana and company.  What seems equally

8  clear is that his connection with the crime ended in the Central

9  District.  It seems to this court that it stretches the notion of

10  aiding and abetting out of all context to hold that a defendant

11  guilty by virtue of his own conduct of a crime in one district, is

12  also an aider and abetter, and thus may be tried in another

13  district by virtue of the effects of his criminal conduct in

14  another district.  See United States v. Cabrales, 524 U.S. 1 (1998)

15  (crime committed in one district with effects in another is not a

16  basis for venue);[4] and United States v. Walden, 464 F.2d. 1015,

17  1019 (4th Cir. 1972) (venue depends on status as principal or

18  accessory).

19      Moreover, it seems to this court that the same analysis which

20  contraindicates that a seller is a co-conspirator, is equally

21  applicable to the issue of aiding and abetting.  Sellers of illicit

22  chemicals have no financial or other interest in what the purchaser

23

24      [4]  There is no doubt that Cabrales is not directly on point.
     The defendant there was not charged with aiding and abetting, but
25  rather as an accessory after the fact.  Nonetheless, where, as
     here, the defendant is a principal in his own right, holding that
26  he is also an aider and abetter seems incongruous.

1    does with the chemicals.  While it is true that for the sale of

2    pseudoephedrine to be criminal, a seller must know of the buyer's

3    criminal intent, in no real sense does he join in that purpose.

4    Once the pseudoephedrine has been sold, the seller is indifferent

5    to whether in fact it is employed for its illegal purpose, or

6    whether the buyer, having found God, flushes it down the toilet.

7    Put somewhat differently, in this case the seller possessed with

8    the intent of distributing, while the buyer possessed with the

9    intent of manufacturing; this disparity would seems enough to

10   suggest expansion of the notion of aiding and abetting for purposes

11   of venue in cases such as this, is inappropriate.

12       Moreover, a principle of statutory construction seems to point

13   to the same conclusion.  It is well-established that "a more

14   specific statute will be given precedence over a more general one

15   . . . ."  Busic v. United States, 446 U.S. 398, 406 (1980).  Here,

16   a specific statute denounces possession with the prohibited

17   purpose, while 18 U.S.C. § 2 is a general statute applicable to all

18   crimes.[5]

19   _____

20       [5]  A second cognate doctrine arising in civil law may also
     have some application.  Where Congress specifies a remedial scheme

21   in a statute, it is unlikely that other remedies provided in a
     broader statute also apply.  See, e.g., Middlesex County Sewage

22   Authority v. National Sea Clammers, 453 U.S. 1, 13 (1981).  A
     powerful rebuttal argument, however, is that where Congress

23   actually denounces specific conduct in two statutes, the government
     enjoys discretion as to which statute it will proceed under.  Under

24   such circumstances, the fact that it elects to proceed under a
     statute which avoids the Sixth Amendment imperative may be thought

25   to be without significance.  That argument is not persuasive as to
     the matter at bar.  The argument begs the question, i.e.

26   prosecutorial discretion only exists where Congress has enacted the
     predicate condition, and this case asks whether, by virtue of the

1    The court, like the government and the defendant, has not

2 found any case directly on point.  Nonetheless, it must rule.  For

3 all the above reasons, I conclude that venue for the possession

4 count lies in the Central District of California, and accordingly,

5 defendant's motion for a new trial and transfer must be granted.

6 United States v. Ruelas-Arreguin, 219 F.3d 1056, 1060 (9th Cir.

7 2000).

8    For all the above reasons, the court ORDERS as follows:

9    1.  Defendant's motion for acquittal as to Count Three is

10 granted.[6]

11    2.  Defendant's motion for a new trial and transfer to the

12 Central District of California as to Count Four is granted.

13    IT IS SO ORDERED.

14    DATED:  May 12, 2005.

15                                  /s/Lawrence K. Karlton
                                  LAWRENCE K. KARLTON
16                                  SENIOR JUDGE
                                  UNITED STATES DISTRICT COURT

17

18

19

20

21

22

23 _____

24 application of Lennick to aiding and abetting, that prerequisite
exists.

25    [6]  Of course, given the fact that the government tried a
conspiracy with Magana, nothing prevents re-indictment for the
26 conspiracy with  Rios-Ramirez and Damani in the Central District.